# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4604 | **DATE** | 1/5/2001 |
| **CASE TITLE** | BFG of Illinois vs. Ameritech Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation recommending that Defendants' Motion to Refer Facts Forming the Basis of Count II to the FCC [DKT #53] be DENIED without prejudice to a future motion to refer specific issues if such issues subsequently arise is hereby submitted to Judge Norgle. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995).
(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 1/8/01 date docketed | 71 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 1/5/2001 date mailed notice | |
| | tw | courtroom deputy's initials | 01 JAN -5 PM 4:09 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| B. F. G. OF ILLINOIS, INC., et al., dba Cashtel, dba Message Central; Amerivoice Telecommunications, Inc. Plaintiffs, <br><br> v. <br><br> AMERITECH CORP., et al., Defendants. | **DOCKETED** <br> JAN 0 8 2001 <br><br> Cause No. 99 C 4604 <br><br> Judge Charles R. Norgle, Sr. <br> Magistrate Judge Geraldine Soat Brown |

To: The Honorable Charles R. Norgle, Sr.
United States District Court Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

The motion of defendants Ameritech Corporation and Ameritech Information Industry Services, Inc. (collectively "Ameritech") to refer the facts forming the basis of Count II of Plaintiffs' Amended Complaint to the FCC [DKT #53] requests that the Court dismiss or stay proceedings on Count II of the Amended Complaint and refer that count to the FCC pursuant to the doctrine of primary jurisdiction. For the reasons set out below, this Court respectfully recommends that Ameritech's Motion to refer Count II be denied without prejudice to a future motion by Ameritech to refer specific issues to the FCC if such issues subsequently arise.

### Procedural Background

Plaintiffs allege that they now, or previously had, provided telemessaging or voicemail services in competition with Ameritech. (Am. Compl. ¶¶21 & 42). Count II of the Amended

1

Complaint alleges that Ameritech violated 47 U.S.C.§ 260(a), a section of the Federal Communications Act as amended by the Federal Telecommunications Act of 1996 (the "Act"). That section prohibits a local exchange carrier subject to the requirements of §251(c) of the Act from subsidizing its telemessaging service directly or indirectly from its telephone exchange service or its exchange access. In addition to incorporating allegations from Plaintiffs' Count I,[1] Count II alleges, on information and belief, that Ameritech is subsidizing its telemessaging services directly or indirectly, based on Plaintiffs' estimates that the "imputed and economic costs incurred by Ameritech in providing voicemail services to its customers exceed the annual revenue derived from Ameritech's residential intraLATA voicemail services. . . ." (Am. Compl. ¶134.) Plaintiffs allege that Ameritech's revenue per customer per month is $3.45, and that Ameritech's "estimated economic and imputed cost per customer per month" are "$3.83+." (*Id.*) Plaintiffs' estimate of Ameritech's cost includes the following:

| | |
|---|---|
| Tigon/Octel mailbox | $2.00 |
| Billing and Collection fees | 0.393 |
| Anticipated uncollectible charge | 0.052 |
| True-up uncollectible charge | 0.69 |
| Hunt Group (network charges) | 0.20 |
| SMDI Link charges | 0.50 |

(Am. Compl., ¶134.) Paragraph 134 of Count II also refers to "economic and imputed costs for such items as advertising, marketing and customer services, wages, salaries, commissions, taxes, and other overhead."

The District Court's Order of June 20, 2000 [DKT #37] substantially denying Ameritech's Motion to Dismiss the First Amended Complaint also denied without prejudice an earlier motion by Ameritech to dismiss or transfer Count II to the FCC for determination. The Court stated that it was

---

[1]Count I was voluntarily dismissed by the Plaintiffs. [DKT #60] and [DKT #64]

2

difficult to determine at that early stage, before Ameritech had answered Count II, whether that Count should be transferred. (June 20, 2000 Order at 5.) Ameritech subsequently answered Count II essentially by denying the allegations. (Defs.' Answer & Aff'm Defenses to the Remainder of Pls.' Am. Compl. [DKT #47-1].) For example, Ameritech denies that "Plaintiffs have provided intraLATA residential telemessaging, voicemail and voice storage and retrieval systems... as those terms are defined by 47 U.S.C.§260(c)." (Am. Compl. ¶130, and Defs.' Answer to ¶130.) Ameritech denies that "Defendants have provided local exchange services subject to the requirements of Section 251(c) of the Federal Commissions [sic] Act, 47 U.S.C. §251(c)." (Am. Compl. ¶131, and Defs.' Answer to ¶131.) Ameritech also denies that it has "provided telemessaging services as defined by Section 260(c) of the Federal Commissions [sic] Act, 47 U.S.C. §260(c)." (Am. Compl. ¶132, and Defs.' Answer to ¶132.) Ameritech denies the allegations of ¶134, quoted above. (Defs.' Answer to ¶134.)

Ameritech's Affirmative Defenses do not allege any new facts bearing on whether Count II should be referred to the FCC, but allege that the FCC has primary jurisdiction over claims brought pursuant to §260 of the Act. (Aff'm Defense 16; Defs.' Answer and Aff'm Defenses at 44-45.) Thus, Ameritech's answer to Count II does not provide significant further factual information about whether Count II is appropriate for referral. If anything, Ameritech's denials suggest that Count II should not be referred because Ameritech appears to deny that the parties have engaged in activities governed by 47 U.S.C. §260.

### Ameritech's Arguments for Referral

Notwithstanding its denials, Ameritech subsequently filed the present motion, again urging the Court to refer Count II to the FCC, and to dismiss or stay discovery relating to that Count. [DKT

#53].[2] Ameritech argues that its answer to Count II, the scope of discovery requested by Plaintiffs, and a July 2000 decision of the District Court for the Eastern District of Virginia in *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507 (E.D. Va. 2000), provide a reason to renew its motion. Plaintiffs strenuously resist Ameritech's motion.

In addition to legal arguments relating to primary jurisdiction, Ameritech's motion makes two arguments for referral to the FCC. The first argument relates to the cost allocation rules that the FCC has established to enforce the Act's prohibition against subsidization. In Ameritech's view, determining whether Ameritech has complied with the FCC's proprietary and cost allocation procedures is complex. (Defs.' Mem. in Supp. at 2.) Ameritech has submitted the affidavit of Richard E. Shutter, Director of Cost Allocation Manual Accounting Safeguards/Regulatory Accounting for Ameritech, who states that Ameritech is required to file a cost allocation manual and certain reports with the FCC. (Shutter Aff., Ex. 5 to Defs.' Mem. in Supp.) The FCC requires Ameritech to hire an independent auditor to audit cost allocation manual issues, and to render an opinion as to whether the data in Ameritech's reports present the information required to be set forth in accordance with Ameritech's cost allocation manual and the FCC's cost allocation rules. (*Id.*) The audit binders are turned over to the FCC and the FCC meets with the auditors annually to review the cost allocation audit. (*Id.*)

In addition, Ameritech argues, voicemail service is not the only service that the Act prohibits a carrier from subsidizing. For example, §276(a) of the Act prohibits any Bell operating company that provides payphone service from subsidizing that service directly or indirectly from its telephone

---

[2]Plaintiffs' Motion to Compel discovery, including discovery relating to Count II, has been held in abeyance. [DKT #51] At a Rule 16 conference held on November 30, 2000, Ameritech's counsel agreed to identify and provide to Plaintiffs the documents that Ameritech would be required to provide in a proceeding before the FCC. [DKT #68]

4

exchange or access service operations. Section 254(k) contains a general prohibition that a telecommunications carrier may not use services that are not competitive to subsidize services that are subject to competition. The FCC applies its cost allocation rules to all of these services.[3] Thus, Ameritech argues, any decision by the Court regarding the FCC's cost allocation rules applied to Plaintiffs' claim could affect the application of those cost allocation rules as to other provisions of the Telecommunications Act. (Defs.' Reply in Supp. at 7.)

Ameritech's second argument is that §260(b) of the Act provides Plaintiffs with a process under which the Plaintiffs may file a complaint for enforcement of §260 with the FCC and obtain a "rapid determination" within 120 days of the filing. (Defs.' Mem. in Supp. at 12.) Ameritech argues that Plaintiffs are seeking discovery that is "highly burdensome and in all likelihood unnecessary," and that the FCC can "better control discovery related to the Section 260 claim" because the FCC is "in a far better position than this Court" to determine what accounting information is needed to resolve a §260 claim. (Defs.' Mem. in Supp. at 10.)

### Plaintiffs' Arguments in Opposition

Plaintiffs contend that there is no need to refer Count II to the FCC, because, Plaintiffs argue, they are not asking the Court to define policy or technical issues relating to subsidization, but only seeking the enforcement of clearly articulated law. (Pls.' Mem. Resp. at 2.) The FCC has defined cross-subsidization in regulations that the Court can enforce. (*Id.* at 9.) Furthermore, they argue, the Act leaves to the plaintiff to decide whether to bring an action for enforcement of §260 in the court or with the FCC, and Plaintiffs believe they will be prejudiced by an expedited proceeding before the FCC with limited discovery. (*Id.* at 4, 12.)

---

[3] 11 FCC Rcd. 1 (1996) p. 17561 ¶50.

## Legal Analysis

> Primary jurisdiction is a doctrine used by courts to allocate initial decisionmaking responsibility between agencies and courts where such overlaps and potential for conflicts exist. . . .
>
> If a court concludes that a *dispute brought before the court* is within the primary jurisdiction of an agency, it will dismiss the action on the basis that it should be brought before the agency instead. Similarly, if a court concludes that *an issue raised in an action* before the court is within the primary jurisdiction of an agency, the court will defer any decision in the action before it until the agency has addressed the issue that is within its primary jurisdiction.

2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise, §14 at 271 (3d. ed. 1994) (emphasis added).

Using the distinction made above, the *dispute* presented in Count II should not be referred to the FCC. Ameritech suggests that the Court should require Plaintiffs to utilize the expedited process of §260(b). However, as the Court stated in its earlier ruling, Plaintiffs had a right to file their complaint in federal court. Section 207 of the Act specifically provides that a person claiming to be damaged by a common carrier may make a complaint to the FCC or may bring suit for recovery of damages in any district court, but may not pursue both remedies. Thus, Congress clearly gave *Plaintiffs* the right to select the forum for their claim that Ameritech violated §260's prohibition on subsidization. Plaintiffs have the right to weigh the costs and benefits of an expedited proceeding before the FCC with limited discovery against the costs and benefits of a lengthier proceeding in court under the Federal Rules of Civil Procedure. Ameritech's arguments about the discovery burden in federal court, complexity of the FCC cost allocation rules and the importance of letting the FCC apply its rules would make a plaintiff's choice provided in §207 illusory, because those arguments would apply to virtually every case in which the plaintiff claimed a violation of §260. Plaintiffs' choice of forum under §207 should be respected unless there is some overriding reason why it cannot be.

The real question is whether there is an *issue* necessary for the determination of Count II that the FCC should address prior to the Court's determining liability on Count II. "[W]hen a claim pending before a court 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body,' judicial proceedings are stayed 'pending referral of such issues to the administrative body for its views.'" *Advamtel, LLC v. AT&T Corp*, 105 F. Supp. 2d at 511, (quoting *United States v. Western Pac. R.R. Co*, 352 U.S. 59, 63-64 (1956)). Although such issues may emerge in the process of litigating Count II, it cannot be said at this time that any issues requiring referral are necessary to a determination of Count II.

A number of factors are used to determine whether referral to an agency's primary jurisdiction is appropriate.[4] However, it is first important to identify the specific issue to which the factors would be applied.

Two cases cited by the parties to support their respective positions illustrate this point. Ameritech points to the *Advamtel* case, where the Court referred some claims to the FCC, including a claim of subsidization, and retained others. In that case 16 local exchange carriers sued two long distance carriers seeking to recover unpaid access service charges. The long distance carriers filed

---

[4] Thus, when deciding whether the doctrine of primary jurisdiction applies, courts consider whether: (1) the issue presented is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise, and whether the issue presented is particularly within the agency's discretion; (2) whether a substantial danger of inconsistent rulings exists if the matter is not referred; and (3) whether the administration of justice favors referral. . . . The Supreme Court has also directed that courts balance the advantages of applying the doctrine against the potential costs arising from delays in proceedings before the agency.

*AT&T Corp. v. Ameritech Corp.*, NO. 98 C 2993, 1998 WL 325242 *1 (N.D. Ill. June 10, 1998), citations omitted. In the *AT&T* case, Judge Manning referred the issue of the propriety of a novel teaming alliance between Ameritech and Quest Communications to the FCC, which had not previously had occasion to consider the arrangement. In that case, unlike the present case, the FCC filed a brief as *amicus curiae* supporting referral, and expressly represented to the court that the FCC would consider the matter "with dispatch." 1998 WL 325242, *1, 4.

counterclaims, alleging, *inter alia*, that the rates charged by the local carriers pursuant to tariffs that had been approved by the FCC were unreasonable, and that the local carriers used the unreasonably high rates to subsidize their local exchange services for which the charges were unreasonably low. The court noted:

> One issue typically referred to the FCC under the primary jurisdiction doctrine is the reasonableness of a carrier's tariff because that question requires the technical and policy expertise of any agency and because it is important to have a uniform national standard concerning the reasonableness of a carrier's tariff, as a tariff can affect the entire telecommunications industry. On the other hand, the doctrine of primary jurisdiction does not apply to an action seeking the enforcement of an established tariff.

105 F. Supp. 2d at 511 (footnote and citations omitted). The court referred one count of the counterclaim to the FCC because it was a direct challenge to the FCC-approved tariffs. The court also referred a counterclaim alleging cross-subsidization that specifically required a determination of whether the FCC-approved tariffs established unreasonably high rates for long distance services as well as whether those rates were being used to subsidize the local exchange service. Thus, determination of the cross-subsidization claim required "an evaluation of the reasonableness of the plaintiffs' rates for both local exchange service and long distance access service," a determination within the FCC's special competence and primary jurisdiction. 105 F. Supp. 2d at 511-12. However, the court refused to refer, stay or dismiss the plaintiff's claims or the other counterclaims, since the determining those claims did not depend on the reasonableness of the plaintiff's tariffs.

In the case cited by Plaintiffs, *National Communications Ass'n. v. American Tel. & Tel. Co.*, 46 F. 3d 220 (2d Cir. 1995), the Court of Appeals for the Second Circuit reversed an order by the District Court referring certain issues to the FCC. In that case, the plaintiff NCA sued AT&T because AT&T had refused NCA's application for lower rates under a contract tariff. The District Court dismissed the lawsuit and referred NCA's claim to the FCC because the validity of a billing

practice was at issue, and the District Court believed that there was a need for FCC expertise and a risk of inconsistent rulings. Reversing, the Second Circuit stated that primary jurisdiction does not apply to cases involving the enforcement of a tariff, as opposed to a challenge to the reasonableness of a tariff. 46 F. 3d at 223. The Second Circuit rejected AT&T's argument that because a tariff matter was involved, it should be heard by the FCC. *Id.* at 224. Rather, the focus is on the specific issues to be determined, which, the Second Circuit stated, presented questions well within a district court's experience. *Id.* at 223-24. *See also, Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 410 (7th Cir. 1998). If the "particular issue in controversy" is one of law, or does not require "highly technical matters central to the agency's mission and expertise" the issue may be decided by the court without a reference to the agency. *Id.*

The Plaintiffs in the present case argue that Count II, like the *National Communications* case, is a matter of enforcing established law. At this time, Ameritech has not established that Count II involves technical or policy matters requiring an initial determination by the FCC. All that the current pleadings on Count II disclose is Plaintiffs' claim that Ameritech's real costs for voicemail exceed Ameritech's charges, and Ameritech's denial of that claim. Ameritech argues in its motion that it accounts for its costs pursuant to the FCC's cost allocation rules, but its Answer to ¶134 does not allege how the "economic and imputed costs" set out in Plaintiffs' ¶134 are treated in the FCC's cost allocation rules or how they are reported by Ameritech. The only discussion on this point is Ameritech's argument that the FCC has already determined that marketing related activities do not constitute telecommunications services for purposes of Section 260(a)(2). (Defs.' Mem. in Supp. at 11.) As the Court in the *Advamtel* case noted, where the FCC has already given guidance on an issue, a primary jurisdiction referral is also unwarranted. 105 F.3d at 512, n.13.

There is some tension between Ameritech's argument that the FCC can "quickly and easily

9

determine whether Ameritech has complied with Section 260(a)(1) of the Telecommunications Act" (Shutter Aff. ¶5), and its argument that Count II requires technical and policy determinations that the FCC should initially determine. The easier the issue is to determine, the more likely that the issue is one of enforcement, not policy, and that the Plaintiffs' choice of forum (the court) need not defer to the agency's primary jurisdiction. Conversely, the more the issue requires agency expertise and implicates cost accounting rules in areas other than voicemail, the less likely that it is amenable to the expedited process of §260(b). The fact is, "'[a]gency decisionmaking often takes a long time' and the delay 'imposes enormous costs on individuals, society, and the legal system.'" 2 Kenneth C. Davis *et al*, Administrative Law §12.1 at 211, (quoted in *National Communication*, 46 F. 3d at 225).

It is possible that as discovery proceeds Plaintiffs' Count II may evolve into a challenge to the principles and policies underlying the FCC's cost allocation rules or may raise questions about the appropriate treatment of particular costs that the FCC has not considered. In the event that such issues emerge, the specific issues should be considered in light of the applicable factors to determine if referral to the FCC is appropriate.

## Conclusion

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion to Refer the Facts Forming the Basis of Count II of the Plaintiffs' Amended Complaint to the FCC be DENIED, without prejudice to a subsequent motion to refer specific issues to the FCC if such issues arise.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file

objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

*Geraldine Soat Brown*
Geraldine Soat Brown
**United States Magistrate Judge**

**Dated: January 5, 2001**