# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4604 | **DATE** | 11/8/2001 |
| **CASE TITLE** | BFG of Illinois Inc., et al vs. Ameritech Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. /s/ Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 13 2001 | 150 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 NOV -9 AM 9:14 | date mailed notice | |
| tw | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**

**NOV 1 3 2001**

| | |
|---|---|
| B. F. G. OF ILLINOIS, INC., et al., dba Cashtel, dba Message Central; Amerivoice Telecommunications, Inc. Plaintiffs, | )<br>)<br>)<br>) |
| v. | ) Cause No. 99 C 4604 |
| AMERITECH CORP., et al., Defendants. | ) Judge Charles R. Norgle, Sr.<br>) Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents Identified on Defendants' Revised Privilege Log ("Pls.' Mot. Compel"). [Dkt # 117.][1] After reviewing the parties' submissions and hearing oral argument on October 31 and November 2, 2001, this Court on November 5, 2001 granted the plaintiffs' motion in substantial part. This Memorandum Opinion and Order sets out the reasons for the Court's decision.

### FACTUAL BACKGROUND

This lawsuit involves claims by entities that provided voice mail messaging services to consumers and previously had contracts pursuant to which the defendants provided billing and

---

[1] The District Judge has referred all discovery motions and non-dispositive motions to the Magistrate Judge for decision. [Dkt ## 40, 55.]

1

collection services (referred to as "subscription billing services") for the plaintiffs. In 1999, the defendants terminated the contracts. The plaintiffs' Amended Complaint seeks relief under a number of theories.

The present dispute relates to documents that the plaintiffs sought in discovery from the defendants. In September 2000, the defendants served two privilege logs on plaintiffs' counsel identifying documents that the defendants withheld from production on the basis of attorney-client privilege or work product protection. On December 4, 2000, plaintiffs' counsel wrote to defendants' counsel setting out twelve claimed deficiencies in the privilege logs. (Pls.' Mot. Compel, Ex. 1.) Plaintiffs' counsel included an eight-page list of names of approximately 600 persons who were listed on the privilege logs as having authored or received documents but whose capacity and titles were not identified. (*Id.*) Defendants' counsel responded by asking for specific entry-by-entry objections. (Pls.' Mot. Compel, Ex. 2.) Plaintiffs' counsel replied that plaintiffs did not believe that to be their obligation, but provided specific document numbers as examples of plaintiffs' objections. (Pls.' Mot. Compel, Ex. 3.)

In March 2001, the defendants served a revised combined 102-page privilege log. (Pls.' Mot. Compel, Ex. 4.) The defendants also provided job titles for 119 of the approximately 600 persons about whom the plaintiffs had inquired. (Pls.' Mot. Compel, Ex. 5.) The defendants state that defendants' counsel spent substantial time reviewing documents and interviewing persons in order to prepare that second log. (Ameritech's Resp. to Pls.' Mot. to Compel Production Docs. Identified on Defs.' Third Privilege Log ("Defs.' Resp.") at 5 [Dkt # 140].)

On May 30, 2001, plaintiffs took the deposition of Susan Lord, an attorney who was employed in-house by defendant Ameritech and who worked with Ameritech's "subscription billing

team." (Pls.' Mot. Compel, Ex. 6.) Ms. Lord is listed in many of the entries on the defendants' privilege logs as the attorney whose involvement in the communication gives rise to the claim of privilege or work product. *See* Pls.' Mot. Compel, Ex. 4; Pls.' Suppl. Mem. Supp. of Pls.' Mot. Compel ("Pls.' Suppl. Mem."), Ex. A. At that deposition plaintiffs' counsel asked a number of questions about Ms. Lord's activities at Ameritech that would go to the factual basis of the assertion of privilege. Defendants' counsel objected to substantially all of those questions and instructed Ms. Lord not to answer. *See* Pls.' Mot Compel, Ex. 6.

On June 15, 2001, the plaintiffs filed their Motion to Compel. At the June 20, 2001 hearing on the motion, defendants' counsel objected that the parties had not met and conferred pursuant to Local Rule 37.2 prior to the filing of the motion. The motion was entered and continued, but defendants' counsel was directed to review the March 2001 privilege log and provide to plaintiffs' counsel any factual information necessary to support the assertion of privilege or work product. (Tr. of June 20, 2001 at 125-131, Pls.' Suppl. Mem., Ex. C.)

On September 18, 2001, the defendants served a further revised privilege log listing approximately 598 entries and produced 309 pages of documents as to which they withdrew their claims of privilege or work product. (Pls.' Suppl. Mem. at 2; Defs.' Resp. at 8.) On October 8, 2001, the plaintiffs submitted a Supplemental Memorandum in Support of their Motion to Compel, and renewed their motion. The plaintiffs argued that the documents produced in September 2001 demonstrated that the defendants had inaccurately and misleadingly described those documents on the previous privilege logs in order to conceal incriminating non-privileged business documents; that the defendants still failed to supply the factual basis of the claims of privilege; and that plaintiffs had been blocked in examining the factual basis for privilege by the objections at Susan Lord's

deposition; and, as a result, the defendants' privilege log had no credibility. *(Id.* at 2-10.) The plaintiffs further argued that in light of the imminent close of fact discovery (December 31, 2001), the plaintiffs needed the documents immediately in order to conduct depositions of defendants' key witnesses. The plaintiffs requested that the Court abrogate defendants' privilege log and require the defendants to produce all documents listed on the log. *(Id.* at 11, 15.)

Defendants' response to plaintiffs' supplemental memorandum stated that between the June 20, 2001 hearing and the September 18, 2001 production of additional documents and revised privilege log, defendants' counsel had made a factually intense review and revision of its privilege logs, spending hundreds of hours revising and supplementing the logs and interviewing 25 persons. (Defs.' Resp. at 8.) The defendants argued that their September 2001 privilege log was accurate, that the plaintiffs had not made entry-by-entry objections to the privilege log entries, and that the factual record was sufficient to sustain the claims of privilege without an additional affidavit of Ms. Lord. (Defs.' Resp. at 12, 18.) The defendants argued that they had not withheld business documents. (Defs.' Resp. at 33.) Prior to the October 31, 2001 hearing on the plaintiffs' motion, the defendants filed a Further Statement of Objective Facts Supporting Anticipation of Litigation and Motion for Leave to File Affidavits *In Camera* and *Ex Parte*. [Dkt # 144.] They requested that the Court not abrogate the log but rather accept affidavits regarding the foundational facts and review the disputed documents *in camera*.

Oral argument was held on October 31, 2001 and continued to November 2, 2001. The defendants' motion to file affidavits *in camera* and *ex parte* was denied, both on the ground that the Court would not accept *in camera* testimony in the form of an affidavit, and on the ground that the Court's June 20, 2001 directive to the defendants required them to submit any factual information

(including any affidavit) necessary to support their claims of privilege or work product to the plaintiffs first.

## LEGAL STANDARDS

The elements of attorney-client privilege are well established.

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The privilege also applies to communications made by an attorney to a client that constitute legal advice or tend to reveal a client confidence. *United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990). The party asserting privilege has the burden of proving the elements. *White*, 950 F.2d at 430.

The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), has been discussed in a number of opinions by the District Judges and Magistrate Judges of this District. *See, e.g., Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610 (N.D. Ill. 2000) (Denlow, M.J.); *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992) (Bobrick, M.J.). Work product protection is a qualified privilege distinct from and broader than the attorney-client privilege. *Caremark*, 195 F.R.D at 613. In order to come under the protection provided by Rule 26(b)(3), the party claiming protection must demonstrate that the documents or material things sought to be protected were prepared: (a) in anticipation of litigation or for trial; and (b) by or for a party or by or for a party's representative. *Id.* at 163-64, citing 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2024 (1994). Determining what is "prepared in anticipation of litigation" has both a temporal and causation element.

5

> "[W]ork product" is defined as those materials produced *because* of the *anticipation of litigation*. Thus, there is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine. Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes.

*Allendale,* 145 F. R. D. at 87, citations omitted, emphasis in original. *See also* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 531-33 (4th Ed. 2001).

In connection with the parties' dispute regarding Ms. Lord's deposition, the facts necessary to establish the attorney-client privilege are not themselves privileged. *See* Epstein, *Attorney-Client Privilege* at 66, and cases cited therein.

## ANALYSIS

In a hearing that extended into substantial parts of two days, plaintiffs' counsel demonstrated by referring to specific documents that the descriptions on the defendants' previous privilege logs were not accurate and that documents that were not privileged or work product protected had been improperly withheld. As one ironic example, plaintiffs' counsel pointed out that two documents reflected in entries on the September 2001 privilege log that the Court had questioned at an October 24, 2001 status hearing were produced by the defendants on October 29, 2001 as having been inadvertently withheld, in spite of the defendants' argument about the care with which the September 2001 log was prepared. The fact that 309 pages of documents were produced *after* the plaintiffs filed their June 15, 2001 motion objecting to the *second* privilege log further supports plaintiffs' argument.

The defendants argue that the plaintiffs should have objected to entries on the September

6

2001 privilege log on a document-by-document basis. This argument misses the point here for two reasons.

First, the plaintiffs had, in fact, identified specific deficiencies in the first privilege log in writing in December 2000. Those deficiencies continued into the March 2001 privilege log. More importantly, a document-by-document objection, which is premised on the description in the privilege log, is pointless if the description is deemed untrustworthy. The accuracy of the descriptions in the privilege log is the foundation of the entire process. The plaintiffs have demonstrated that they had good reason to be skeptical about the descriptions in the defendants' privilege log.

The plaintiffs also proved that they were blocked in their efforts to investigate the accuracy of the descriptions. At Ms. Lord's deposition, plaintiffs' counsel's proper questions regarding foundational facts going to the assertion of privilege were improperly objected to and the witness instructed not to answer. Likewise, in their objections to the first privilege log, the plaintiffs included an eight-page single-spaced list of approximately 600 persons named on the privilege log to have received or authored listed documents. In response the defendants identified fewer than half of these persons.

At the June 20, 2001 hearing the defendants were specifically instructed to provide the plaintiffs with whatever additional factual material was necessary to support defendants' claims of privilege. Although the proponent of a privilege log is not necessarily required to provide an affidavit with the initial service of the log, by June 2001, the parties were long past that point. Specific challenges had been asserted by the plaintiffs, and the plaintiffs had complained in their June 15, 2001 motion to compel about the limitations imposed during Ms. Lord's deposition.

Attempting to submit affidavits in November is not an adequate or appropriate response.

There was considerable discussion at the oral argument about whether a document that had been withheld and subsequently produced was "incriminating." However, that also misses the point. A party propounding discovery is entitled to all of the documents that fall within the proper scope of discovery and are not privileged or protected as work product. It does not matter whether the document is a smoking gun, or a piece of admissible evidence, or one link in a chain of evidence or simply likely to lead to admissible evidence, for example, as the subject of a deposition question.

Thus, the Court finds that the plaintiffs have demonstrated that their objections to defendants' assertion of privilege and work product protection have been correct, that descriptions on defendants' privilege logs were inaccurate, and that documents that should have been produced many months ago were improperly withheld. The Court agrees that an appropriate remedy may be the abrogation of defendants' privilege log and an order to produce all withheld documents.

When a Court chooses among possible remedies for a failure to comply with discovery obligations, the Court should select the remedy that is most likely to achieve the objective of the Federal Rules of Civil Procedure, the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, in determining the appropriate remedy here, the Court decided on the following course.

The Court personally reviewed each of the more than 500 documents listed on the defendants' privilege log, and made a determination of the document's status based on information that had been provided to the Court by the parties. That determination was made in light of the legal standards set out above, including the fact that the burden is on the proponent of the privilege. The review showed that a substantial number of documents listed on the September 2001 log are not

protected by attorney-client privilege or work product protection, and on November 5, 2001 those documents were ordered to be produced before the close of business on November 6, 2001. Appendix A to this Opinion sets out the documents that were ordered to be produced.

Several points became apparent in the review.

First, a substantial number of the documents are duplicates of each other.

Second, in situations where the authors or recipients included persons about whom the plaintiffs specifically asked for information but no information was provided, the defendants have failed to sustain the factual foundation for assertion of privilege, which requires that the communication be treated as confidential and transmitted only to those persons who are entitled to receive privileged communications. If there is no information provided about a person to whom the communication was intentionally transmitted, it is axiomatic that there cannot be a finding that the communication was intended to be and maintained confidential.

Third, defendant Ameritech's in-house counsel knew or should have known that in order to maintain the confidentiality that is essential to privileged status, the distribution of a communication must be restricted. Communications that reflect simply "5 addressees" or "suppressed distribution list" do not evidence an intention to create and guard a confidential and privileged communication.

Fourth, when a corporation directs an in-house attorney to work with a business team, as Susan Lord worked with the "subscription billing team," there is a particular burden on that corporation to demonstrate why communications deserve protection and are not merely business documents. *See* Epstein, *Attorney-Client Privilege* at 233-34. This Court, consistent with decisions of other federal courts, will not tolerate the use of in-house counsel to give a veneer of privilege to otherwise non-privileged business communications. *See, e.g., Brand Name Prescription Drugs*

*Antitrust Litigation*, No. 94 C 897, MDL 997, 1995 WL 663684, *2-3 (N.D. Ill. Nov. 6, 1995)(Kocoras, J.). A particular problem with this scenario is that there is no way that the party seeking the documents can detect that improper use merely from the description on the privilege log. This puts an important professional responsibility on in-house counsel and litigation counsel to police the anticipatable desire of corporations to shield as much as possible from their adversaries in litigation.

Not surprisingly, Ameritech was sophisticated in its efforts to shield its communications. An example is the August 31, 1998 Internal Audit Report sent to Michael Karson who was both a vice president and general counsel of Ameritech Information Industries Services. (Doc. PRV 3570-3577.) Defendants' privilege log describes this document as attorney-client privileged and prepared in anticipation of litigation. However, it is clear from the document that it is a business report prepared for business reasons, and not to assist in the defense or prosecution of an anticipated lawsuit. The audit was done and the document was generated because Karson "was concerned that controls over subscription billing are not adequate." (Doc. PRV 3572.) As to each problem described there is a suggested "management solution." This Internal Audit Report is not even colorably protected; it is a business document, plain and simple. But the plaintiffs would never be able to know that from the description on the defendants' privilege log.

Another example is Document PRV 3416-3419, and its numerous copies. In the September 2001 privilege log this document is described as Bill Brockelman seeking legal advice from counsel Susan Lord with respect to the uncollectible process. However, it is clear from the text of the document that it is, in fact, an e-mail from Susan Lord to Richelle Barker, with copies to eleven addressees, not identified. The defendants assume that those are the same eleven people who are

listed on the last page. But even assuming, *arguendo*, that the document's distribution was limited to those eleven people, and that those eleven people were within the scope of persons entitled to receive privileged communications, the document is not a request for legal advice. In reality it is the announcement by Bill Brockelman to the subscription billing team of what Mr. Brockelman describes as a "final business decision." The veneer of privilege is applied via one sentence on the last page stating, "If you agree with the above, please approve from a legal perspective and so forward to" a list of eleven persons and Mr. Brockelman. There is nothing else in the document that requests legal advice or suggests communication of confidential information in order to obtain a legal opinion. When Susan Lord forwarded the document to Ms. Barker and the eleven unspecified addressees (without any apparent comment by Ms. Lord), she was not communicating legal advice, she was forwarding a business decision about a plan to deal with the uncollectible process. It is well established that a corporation cannot shield its business documents by routing them through an attorney. If Document PRV 3416-3419 were deemed privileged, that is exactly what would be achieved.

Document PRV 2667-2668 is a similar example. The defendants assert that this document is attorney-client privileged. However, it is clear that this document is nothing more than a business document given a veneer of privilege by routing through in-house counsel. The basic document is an e-mail from David Houle (a non-attorney) to Ms. Lord. The document begins, "Judy Snider [a non-attorney] asked me to comment on the accuracy of uncollectible allocations based on our ALDIS/Carrier experiences." Mr. Houle then describes his unit's experience. There is no reference to any request for legal advice or any legal problem. Document PRV 2667-2668 is actually Ms. Lord's e-mail forwarding Mr. Houle's e-mail to Ms. Snider, without any comment of any kind by

Ms. Lord. This document is no more privileged than if Mr. Houle had sent the e-mail directly to Ms. Snider.

Again, there is no way the party seeking discovery could challenge the assertion of privilege based on the description of Document PRV 3416-3419 or Document PRV 2667-2668 in the privilege log. Unless in-house counsel and litigation counsel are scrupulous in their assertion of privilege, the courts will be asked to review all documents in which an in-house attorney's involvement is the basis for assertion of privilege or work product. That would impose an unbearable burden on the courts and other litigants. Thus, where the court finds that a party used in-house counsel to apply a veneer of privilege to non-privileged business communications, the court should impose costs on that party.

Finally, the defendants asserted work product protection as to a number of spreadsheets of financial figures. Some of these were created after March 3, 1999, the date that the plaintiffs' counsel sent a demand letter and litigation was reasonably foreseeable, including a "chart of disputed amounts." (Doc. PRV 3554.) That document appears, in fact, to satisfy both the temporal and causation elements of work product protection. On the other extreme, several of the spreadsheets are patently business documents, for example, Document PRV 3627, which is entitled "Subscription billing financial model" and contains revenue estimates. Other spreadsheets for which protection is sought were prepared in 1998 and contain statistical summaries of so-called "true-ups" not just with respect to the plaintiffs but also regarding Ameritech's other subscription billing services clients such as ADT Security Systems. The defendants have the burden of demonstrating that these documents were prepared *because of* imminent litigation rather than to facilitate business decisions, and there is nothing so demonstrating.

## CONCLUSION

For the reasons set out above, the Court has ordered that the defendants produce to the plaintiffs on or before the close of business on November 6, 2001 the documents listed in Appendix A.

Pursuant to Fed. R. Civ. P. 37(a)(4), after affording the defendants an opportunity to be heard, the Court found that the defendants' non-disclosure of many of the documents listed on their March 2001 and September 2001 privilege logs was not substantially justified. Although the Court is not awarding all of the relief requested by the plaintiffs, the Court awards the plaintiffs' reasonable expenses, including attorneys' fees and costs, incurred in the following activities: Preparing and filing Plaintiffs' Motion to Compel in June 2001; preparing and filing Plaintiffs' Supplemental Memorandum in October 2001, and arguing the plaintiffs' motion on October 31 and November 2, 2001.

The plaintiffs shall submit an itemization of their fees and expenses to the defendants on or before November 13, 2001. If the defendants dispute any amounts sought, the defendants shall notify the plaintiffs on or before November 20, 2001 of the specifically disputed items, and the parties shall proceed as set out in Local Rule 54.3(d). Any amount not disputed shall be paid by November 30, 2001.

**IT IS SO ORDERED.**

GERALDINE SOAT BROWN
**United States Magistrate Judge**

**DATED: November 8, 2001**

# APPENDIX A

### Documents to be Produced

### Defendants' Revised Privilege Log – AM Documents, September 17, 2001

- PRV 195-207
- PRV 212-224
- PRV 226-252
- PRV 259-271
- PRV 273-285
- PRV 316-324
- PRV 328-336
- PRV 413-415
- PRV 502-505
- PRV 527
- PRV 550-551
- PRV 563-565
- PRV 566-568
- PRV 900-901
- PRV 940-946
- PRV 1071-1082
- PRV 1083-1086
- PRV 1166-1171
- PRV 1187
- PRV 1195-1201
- PRV 1234-1235
- PRV 1236-1237
- PRV 1238
- PRV 1239-1240
- PRV 1246
- PRV 1296
- PRV 1301
- PRV 1336
- PRV 1381-1382
- PRV 1383-1385
- PRV 1418
- PRV 1420
- PRV 1425-1427
- PRV 1460-1463
- PRV 1503
- PRV 1505
- PRV 1509-1510
- PRV 1511-1513
- PRV 1719-1736 (except PRV 1718)
- PRV 2023-2026 (except redact on 2026 "Bill's recommendation")
- PRV 2027-2033 (except redact on 2027 "Macks . . . $"; redact on 2028 "Macks . . . problems"; redact on 2031 "Mike Carson . . . this")
- PRV 2046-2047
- PRV 2051-2054
- PRV 2067-2069 (except redact on 2068 "Need . . . tariff")
- PRV 2071-2071A
- PRV 2072
- PRV 2076-2081
- PRV 2082-2087
- PRV 2094-2095
- PRV 2137-2139 (unredacted)
- PRV 2147-2150
- PRV 2151-2154
- PRV 2155-2159
- PRV 2206
- PRV 2207-2209
- PRV 2210
- PRV 2217
- PRV 2220
- PRV 2223
- PRV 2242
- PRV 2243
- PRV 2254
- PRV 2267-2270
- PRV 2288
- PRV 2309
- PRV 2338-2340
- PRV 2341-2376
- PRV 2425-2426
- PRV 2428
- PRV 2430-2431
- PRV 2449
- PRV 2451

- PRV 2454
- PRV 2457
- PRV 2485-2486
- PRV 2487-2488
- PRV 2489-2490
- PRV 2491-2492
- PRV 2497-2498
- PRV 2502-2503
- PRV 2504
- PRV 2505-2515
- PRV 2516
- PRV 2581-2628
- PRV 2629-2666
- PRV 2667-2668
- PRV 2669-2782
- PRV 3372
- PRV 3373
- PRV 3378
- PRV 3379
- PRV 3393-3395
- PRV 3416-3419
- PRV 3428
- PRV 3487-3488
- PRV 3549
- PRV 3561
- PRV 3570-3577
- PRV 3618-3623
- PRV 3624-3629
- AM 25518
- AM 77970
- AM 83539-83540
- AM 94126
- AM 94700 (2nd redaction)
- AM 116444-116445
- AM 119202
- AM 119212-119214
- AM 119215 (unredacted)
- AM 119231
- AM 119250
- AM 119253-119255
- AM 119309-119311
- AM 119632
- AM 125863-125864
- AM 127020
- AM 127028-127041
- AM 127565-127575 (unredacted, except maintain redactions on 127571 and 127573)
- AM 127576-127580 (unredacted, except maintain redactions on 127577 and first redaction on 127579)
- AM 127581-127587 (unredacted, except maintain redactions on 127584 and 127586)
- AM 127588-127609
- AM 127610-127615 (unredacted, except maintain redactions on 127611 and 127613)
- AM 127616-127626
- AM 127634-127637
- AM 127638-127668 (unredacted)
- AM 127669-127673 (unredacted)
- AM 127674-127680 (unredacted, except maintain redaction on 127674 and 127675)
- AM 127681 (unredacted)
- AM 127682-127683 (unredacted)
- AM 127684-127685 (unredacted)
- AM 127686-127689 (unredacted)
- AM 127691-127702
- AM 127703-127705 (unredacted, except maintain redaction on 127704 and 2nd and 3rd redactions on 127705)
- AM 136879
- AM 144267-144269 (unredacted)
- AM 144288-144290 (unredacted)
- AM 144301-144302
- AM 144303-144304
- AM 144431
- AM 144446-144447
- AM 144664-144666
- AM 144764 (unredacted)
- AM 144771-144773 (unredacted)

## Defendants' Revised Privilege Log – SBC Documents, September 17, 2001

- PRV 2805-2807
- PRV 2867-2870
- PRV 3006
- PRV 3007
- PRV 3008
- PRV 3009
- PRV 3011
- PRV 3013-3014
- PRV 3017-3021
- PRV 3022-3023
- PRV 3028-3030
- PRV 3031-3032
- PRV 3080-3081
- PRV 3093
- PRV 3094-3097
- PRV 3122-3123
- PRV 3231-3232
- PRV 3249-3250
- PRV 3256
- PRV 3258-3260
- PRV 3323-3326
- PRV 3328-3332
- PRV 3342-3354
- SBC 8600-8604
- SBC 19972-19973, 19977
- SBC 54545
- SBC 61135-61136
- SBC 61351
- SBC 61357
- SBC 61414
- SBC 61416
- SBC 070828
- SBC 070832
- SBC 070837-070838
- SBC 070842-070857
- SBC 070859-070864
- SBC 070865-070867
- SBC 070896-070898
- SBC 070903-070904
- SBC 070905
- SBC 070917
- SBC 070919
- SBC 070923-070925
- SBC 070933-070935
- SBC 070940-070941
- SBC 070942-070943
- SBC 070944-070945

## Defendants' Privilege Log – SBC Documents Relating to Count I

- PRV 1026
- PRV 1517-1518
- PRV 1554-1571
- PRV 1587-1592
- PRV 1593-1601
- PRV 1602-1612
- PRV 1622-1630
- PRV 1642-1662
- PRV 2791-2804
- PRV 2808-2823
- PRV 2871-2873
- PRV 2880-2882
- PRV 2885-2887
- PRV 2944
- PRV 2945-2951
- PRV 2952-2958
- PRV 2964-2967
- PRV 2970-2974
- PRV 2975-2977
- PRV 2986-2989
- PRV 2996-2999
- PRV 3000-3001
- PRV 3044
- PRV 3054-3063
- PRV 3087
- PRV 3107-3108
- PRV 3109-3112
- PRV 3113-3121
- PRV 3124
- PRV 3126-3128
- PRV 3129-3131
- PRV 3132
- PRV 3133
- PRV 3143-3146
- PRV 3148-3149
- PRV 3158
- PRV 3171-3172
- PRV 3173
- PRV 3174-3190
- PRV 3221
- PRV 3267-3268
- PRV 3290
- PRV 3293-3301
- PRV 3333-3335
- PRV 3338-3339
- PRV 3340-3341
- PRV 3529-3534
- SBC 000232
- SBC 004239
- SBC 004244
- SBC 004246-004247
- SBC 021160-021163
- SBC 048293
- SBC 061201-061202
- SBC 061206-061207
- SBC 061215-061216
- SBC 061385
- SBC 061423
- SBC 061530-061536
- SBC 70968
- SBC 70969-70970 (unredacted)
- SBC 70971-70973 (unredacted)
- SBC 70996-70997
- SBC 71005-71006
- SBC 71011-71015